## DIVORCED WIFE NOT ENTITLED TO BENEFITS FROM FRATERNAL ASSOCIATION.

Circuit Court of Cuyahoga County.

BLANCHE MAHAR v. ROSIE MAHAR ET AL.

Decided, February 13, 1912.

*Fraternal Beneficiary Association—Death Benefits—Divorced Wife Can Not Receive.*

Under Section 9467, General Code, payment of death benefits by a fraternal beneficiary association can not be made to one who was the wife of the member when a certificate was issued to him, and named therein as his beneficiary, without after change, but was divorced from him before his death and hence before the death benefits became payable.

*Hidy, Klein & Harris,* for plaintiff in error.

*E. P. Strong, J. D. Clark* and *George C. Johnson,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

The Independent Order of Foresters filed its petition in the court of common pleas, alleging that it is a fraternal beneficiary association, organized under the laws of the Dominion of Canada and doing business in Ohio by authority of law. That on the 19th day of January, 1909, one William Mahar died, being then a member of said association, to whom it had theretofore issued a benefit certificate in the sum of one thousand dollars, which was then in full force, and setting out that it was ready to pay

said sum to the person entitled to receive the same, and brings the amount into the court to abide its order. That Blanche Mahar and Rosie Mahar each claimed payment of this benefit fund to herself, and so the question of the party entitled to the payment was submitted to the court.

Both of these parties answered, each setting up facts which she claimed entitled her to the money. The court ordered that Rosie Mahar was entitled to it and made its order accordingly. To this finding and order Blanche Mahar prosecutes this proceeding in error.

The facts are these: one William Mahar and the plaintiff in error, Blanche Mahar, were married June 20th, 1900, at Lorain, Ohio. Soon after their marriage and in November, 1901, the said William Mahar became a member of Court Huntington-tower No. 3835 I. O. F. and took out insurance in the sum of $1,000, which insurance under the mortuary certificate was made payable to Blanche Mahar, the plaintiff in error, who was then his wife. The parties lived together from that time on until 1908 when they separated and the said William Mahar secured a divorce from his wife in the Court of Common Pleas of Cuyahoga County, Ohio. Thereafter the said William Mahar, on or about the 2d day of December, 1908, married the defendant in error, Rosie Mahar, and the following month, to-wit, the 19th day of January, 1909, died, and during all of the time aforesaid the said William Mahar resided either in Cleveland or in Lorain, Ohio. The beneficiary was at no time changed. The policy now reads, and the certificate evidencing the insurance is made payable to Blanche Mahar, the plaintiff in error. No children were born to either the plaintiff in error or the defendant in error.

The contention on the part of the plaintiff in error is that Blanche Mahar, having been designated originally as the beneficiary in the beneficial certificate, and no change of beneficiary having been made, as it could have been made by William Mahar had he applied to the association to have such change made, the person entitled to payment remains unchanged, and so the court should have ordered that the money be paid to Blanche; whereas, on the other hand, it is argued that though Blanche was named as the beneficiary in the certificate, yet the fact of the divorce of

William from her took away from her all right to any payment under this certificate.

The certificate itself provides, among other things:

"The supreme court doth further agree, subject to the proviso hereinafter contained, on the death of the said member being established to the satisfaction of the executive council, to pay to the beneficiary or beneficiaries designated hereon (the said member reserving the power of revocation and substitution of other beneficiaries in accordance with the provisions of the constitution and laws of the order) a mortuary benefit of one thousand dollars, less the amount paid on account of the total and permanent disability benefit," etc.

It is further provided that the certificate is issued "subject to the provisions of the constitution and laws of the order as they existed at the time the said applicant became a member of the order, and as they may be amended from time to time thereafter."

The act of incorporation in the Dominion of Canada, under and by virtue of which the association was created and chartered provides, among other matters, that the purposes of such association shall be:

"A. To unite fraternally all persons entitled to membership under the constitution and laws of the society;

"E. To establish a benefit fund, from which, on satisfactory evidence of the death of a member of the society who has complied with all its lawful requirements, a sum not exceeding $3,000 shall be paid to the widow, orphans, dependents, or other beneficiary whom the member has designated, or to the personal representative of the member; or from which upon the completion of the expectancy of life of a member, as laid down in said constitution and laws, such shall be paid to himself."

The constitution of the organization provides, among other things:

"The insurance or mortuary benefit of a member shall be paid to the member himself, or to the wife or husband of, or to the affianced wife of, or to the affianced husband of, or to the children of, or to the blood relations of, or to persons dependent on the member."

It is manifest that if the right to payment of this mortuary benefit depends upon the relation which subsisted between the member and the person named as a beneficiary at the time of the issuing of the certificate, this money should be paid to Blanche Mahar. And it may here be said that if she is not entitled to such payment, she was not prejudiced by the order of the court fixing Rosie Mahar as the person to whom the money should be paid. This is said because objection was made to some evidence offered in support of the proposition that Rosie Mahar and William Mahar were legally married after the divorce between Blanche Mahar and William Mahar. Since, however, it is a matter of indifference to Blanche Mahar to whom this money should be paid provided she is not entitled to receive it, no prejudice came to her because of any ruling upon evidence in relation to the marriage of Rosie Mahar and William Mahar.

Our attention is called by counsel for the plaintiff in error to a considerable number of cases in which it is held that the person designated as the beneficiary, if entitled to be so designated at the time the certificate is issued, remains such beneficiary, notwithstanding a change of relation thereafter occurring between the parties before the death of the person procuring the issuing of the certificate.

The case of *Connecticut Mutual Life Insurance Co.* v. *Schaefer*, 94 U. S., at page 457, is such case. The second clause of the syllabus reads:

"A policy of life insurance, originally valid, does not cease to be so by the cessation of the assured party's interest in the life insured, unless such be the necessary effect of the provisions of the instrument itself. So held, where, subsequently to effecting an insurance by husband and wife, upon their joint lives, payable to the survivor upon the death of either, they were divorced *a vinculo matrimonii*, and she, having thereafter paid the premiums to the time of his death, brought suit on the policy."

In the opinion of this case, Mr. Justice Bradley, at page 461, uses this language:

"We do not hesitate to say, however, that a policy taken out in good faith and valid at its inception, is not avoided by the cessation of the insurable interest unless such be the necessary effect of the provisions of the policy itself."

Other cases cited by counsel support this proposition as applied to regular life insurance companies, but it is to be remembered that the company now being considered is governed by the statutes applicable directly to fraternal beneficiary associations.

In the case of *White* v. *Brotherhood of American Yeomen,* decided by the Supreme Court of Iowa and found in 99 N. W., at 1071, a case arose under the provisions of Section 1824 of the code of Iowa, and it is said in the second clause of the syllabus:

"The code, Section 1824, provides that no fraternal association shall issue any certificate unless the beneficiary be the husband, wife, relative, legal representative, heir or legatee of such member. An association which expressed its object to be a bestowal of financial benefits on the family, widow, heirs, relations and such others as may be permitted by the laws of the state, and constitution and by-laws, and which permitted a change of beneficiary, issued a certificate payable to a certain person by name, such person being the wife of the member when the certificate was issued. Subsequently she was divorced and the member remarried, but made no change of beneficiary. *Held*: That on the death of the member, the first wife was entitled to the proceeds of the certificate."

In the opinion of this case, Judge Sherwin uses this language:

"The statute provides only for the relationship that shall exist when the certificate is issued, and does not in words, or by fair implication, limit payment to those only who occupy such relation at the time of death. It was the evident intent of the Legislature to prohibit anything in the nature o? gambling contracts, and to so limit the beneficiaries as to accomplish such a result."

And further along in the opinion it is said:

"It is a well recognized rule that a policy of life insurance or a designation of a beneficiary, valid in its inception, remains so although the insurable interest or relationship of the beneficiary has ceased, unless it is otherwise stipulated in the contract." Citing *Life Ins. Co.* v. *Schaefer,* 94 U. S., *supra,* and *Bacon on Benefit Societies,* Section 253.

Turning to the section referred to in Bacon, we find this:

"The general rule undoubtedly is that a policy of life insurance or a designation of beneficiary, valid in its inception, re-

mains so, although the insurable interest or relationship of the beneficiary has ceased, unless it is otherwise stipulated in the contract.''

In support of this a large number of authorities are cited which sustain the doctrine in the text and as stated in the cases from which quotations have hereinbefore been made.

Bacon then follows in these words:

''Where, however, the beneficiaries of members of benefit societies were, by statute, restricted to the family dependents or relations of their members, and a member of one of such societies designated his wife from whom he afterwards was divorced, it was held that she lost her rights under the designation in consequence of such divorce.''

This case will seem to be apparently against the authorities, but the reason given is that under the statute the relationship or status must exist at the time of the maturity of the contract. Especially is this true if the regulating statute specifies certain classes to which *payment* of benefits shall be made.

Bacon then calls attention to the Iowa case, *White* v. *The Brotherhood of American Yeomen, supra,* and this, as has already been shown, is reasoned by the court upon the proposition that the statute fixes who may be named as beneficiaries, but it does not fix to whom payment shall be made.

The section of our statute, which has already been quoted, expressly provides that the *payment* of death benefits shall be confined to the family, heirs, relatives by blood, marriage or legal adoption, affianced husband or affianced wife, or to a person or persons dependent on the member.

Attention has already been called to the law of the association which provides for payment to be made to parties other than the beneficiary named, where the payment to the beneficiary would be repugnant to the laws of the state or country at the time of the death of the member causing the certificate to be issued.

The case of *Supreme Commandery, etc.,* v. *Margaret Everding,* 20 C. C., 689, is cited in support of the claim of the plaintiff in error, Blanche Mahar. In that case nothing is said with

reference to the statute of Ohio fixing the persons to whom payment should be made. The decision seems based entirely upon the proposition that the person to whom the money was awarded was the wife of the member at the time the certificate was issued, and was therefore a proper person to be named as beneficiary, and then to reach this conclusion because of the cases which hold that a person, properly a beneficiary at the time of the issuing of the certificate, remains such beneficiary so long as no change of beneficiary is made in the certificate. But the cases cited are those where the policies were issued by regular life insurance companies.

That case was decided by a very able bench, consisting of Judges Scribner, Bentley and Haines, and the opinion was prepared by Judge Haines, for whose opinion we have the highest respect, as has the entire bar of the state. However, that case was decided in 1893. A later case, *Brotherhood, etc.*, v. *Jane Taylor, etc.*, decided by the Circuit Court of Ross County in 1906, holds the contrary doctrine. This case was also decided by a very able court, and we fell disposed to follow this rather than the Lucas county case. In that case there had been a divorce between the member on whose account the certificate was issued and the beneficiary designated in the policy, who was his wife at the time the certificate was issued. The third clause of the syllabus in this case reads:

"Under the laws of Ohio, beneficiary certificates are to be construed with reference to the status of the beneficiary at the time of payment (meaning payment of the loss). The words 'Alice B. Taylor' in the certificate are *descriptio personae,* and may be rejected as surplusage, and the certificate is construed to mean that if there be no wife living, the benefits go to the administratrix in trust for his heirs."

In the opinion in this case, Judge Jones uses this language:

"In the determination of this case, it may be said at the outset that the various rules of law applicable to ordinary life insurance companies do not apply in this case, for the reason that it is provided by statute that such associations shall be exempted from provisions of the insurance laws of this state, and no law hereafter passed shall apply to them unless they be expressly designated therein."

We reach the conclusion, both from the spirit and purpose of the statutes in relation to these associations, and from the express language of Section 9467 of the General Code, that there was no error in the decision of the court of common pleas, and the judgment is affirmed.